## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### FORT LAUDERDALE DIVISION

### CASE NO. 0:19-cv-61161-KMM

KRISTEN POWELL, individually and
on behalf of a class of others similarly situated,

       Plaintiff,

v.

RUGSUSA.COM, INC.,

       Defendant.

_____/

### DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE PROCEEDINGS, AND INCORPORATED MEMORANDUM OF LAW

Defendant RugsUSA.com, Inc. ("Defendant" or "RugsUSA"), by and through its undersigned attorneys, and pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 *et seq*., hereby moves to compel Plaintiff Kristen Powell to arbitrate the claims asserted in her Complaint [D.E. 1] and to dismiss or, alternatively, stay the proceedings during the pendency of the arbitration. In support thereof, Defendant states as follows:

### INTRODUCTION

Plaintiff Kristen Powell twice signed up to receive text messages from RugsUSA, and while doing so agreed to arbitrate this dispute on an individual basis. Ms. Powell accepted the terms disclosed in the offers by texting keywords and completing a double opt-in process. There are unambiguous, written records of this: she could not have obtained the two coupons RugsUSA provided to her without first manifesting her assent – not once, but twice. Again, these facts are beyond dispute: computer records show she viewed an online offer, and text message logs show that she sent a pre-filled text message to sign up for the messages in question.

The U.S. Supreme Court and the Eleventh Circuit have repeatedly confirmed that courts must rigorously enforce arbitration agreements. National policy favors arbitration. For the reasons below, the Court should compel Ms. Powell's individual claims against RugsUSA to

arbitration and dismiss Ms. Powell's class claims with prejudice in light of her class action waiver.   To the extent Ms. Powell raises any questions regarding the applicability or enforceability of the arbitration agreement, those questions are for the arbitrator to decide, not the Court.

## FACTUAL BACKGROUND

I.   **Ms. Powell Subscribed to Receive Automated Marketing Messages from RugsUSA by Responding to Two Separate Promotional Offers**

On November 28, 2017, at 8:16:15 PM, Ms. Powell visited RugsUSA's website using the web browser on her mobile phone or tablet.[1]   *See* Declaration of Munan Xue, attached hereto as Exhibit A, ¶ 13.   At such time, she saw and then clicked on the following image:



*Id.*  ¶ 13.  As clearly indicated in the image above, Ms. Powell was informed that:

> By joining via text, you agree to receive recurring automated marketing messages at the cell number used to send the Join text. Consent is not a condition of any purchase.  Msg & data rates apply.  View **Terms & Privacy** [http://attn.tv/rugsusa/terms.html].

*Id.* ¶¶ 13-15.  After viewing the prompt and the language referenced above, Ms. Powell clicked the red button, which pre-populated the following text message into her messaging application:

---

[1] Ms. Powell's counsel provided her phone number to counsel for RugsUSA on May 28, 2019. To protect Ms. Powell's privacy, her mobile phone number will not be disclosed in this motion and has been partially redacted in Exhibit 1 to the Declaration of Munan Xue.

"Send this text to subscribe to Rugs USA and get your 40 percent OFF coupon code! (ref: ACHPv)." *Id.* ¶ 16.

There can be no dispute that Ms. Powell clicked on the red button because of what happened next: the software completed a text message for her to send, and she sent it.  At 8:16:31 PM, she sent the pre-populated text message to RugsUSA and received the following two text messages from RugsUSA:

> [8:16:31 PM] Rugs USA: Thanks for subscribing to Rugs USA! Msg & data rates may apply.  Up to 10 msgs/month.  Reply HELP for help, STOP to cancel.

> [8:16:35 PM] Rugs USA: Hi your 40% off coupon is BLK40. Click this link to set your preferences: https://rugsusa.attn.tv/1/s/mb6.

*Id.* ¶¶ 17-19.

Just a few months later, Ms. Powell sought to receive a second promotional offer from RugsUSA.  Specifically, on April 9, 2018, at 7:50:53 AM, Ms. Powell again visited RugsUSA's website (again using a mobile phone or tablet), at which time she viewed the following image:



*Id.* ¶ 20.   Ms. Powell once again clicked on the red button above, which pre-populated the following message into her messaging application: "Send this text to subscribe to Rugs USA and get your 20 percent OFF coupon code! (ref: AF3AS)."  *Id.* ¶ 21.

At 7:51:06 AM, Ms. Powell sent the second pre-populated text message above to RugsUSA and received the following message in response:   "Rugs USA: You are already subscribed. Your 20% off coupon code is MOB202236025657. Click here to shop now: http://www.rugsusa.com/."   *Id.* ¶ 22.

## II.   By Signing Up to Receive Automated Marketing Messages from RugsUSA, Ms. Powell Agreed to the RugsUSA Messaging Terms and Conditions, which Contain a Binding Agreement to Arbitrate (and a Class Action Waiver)

Ms. Powell accepted and received discounts from RugsUSA pursuant to the RugsUSA Messaging Terms and Conditions (the "Messaging Terms") that were expressly incorporated into each of the offers and made available to her at http://attn.tv/rugsusa/terms.html.   *See* Munan Decl. at Ex. 2.   These terms are linked from the "Terms and Conditions" that appear in each of the images she clicked on.   Because Ms. Powell subscribed and consented to receiving automated text message communications, and accepted the RugsUSA's offer pursuant to the stated terms through what is known as a "double opt-in process," Ms. Powell does not have a claim under the TCPA.[2]   But that's not the issue for this Court to decide here.   Ms. Powell's purported claims should not be adjudicated in this forum as they are subject to a valid arbitration agreement that specifically delegates threshold arbitrability matters to the arbitrator. Specifically, the Messaging Terms that Ms. Powell agreed to contained the following agreement to arbitrate disputes and related dispute resolution procedures:

> (a)     General. In the interest of resolving disputes between you and Rugs USA in the most expedient and cost effective manner, you and Rugs USA agree that any dispute arising out of or in any way related to these messaging terms and conditions ("Messaging Terms") or your receipt of text messages from Rugs USA or its service providers will be resolved by binding arbitration. Arbitration is less formal than a lawsuit in court. Arbitration uses a

---

[2] *See, e.g., Winner v. Kohl's Dep't Stores, Inc.,* No. CV 16-1541, 2017 WL 3535038, at *7 (E.D. Pa. Aug. 17, 2017) ("We find that including the words 'Terms and Conditions' and the link to the website in the ad, along with the disclosure in the responsive text that the consumer would receive five to seven texts per month, is sufficient to provide a consumer with 'a clear and conspicuous statement' that the consumer has consented to receiving autodialed telemarketing texts. Moreover, Defendant's second text advised consumers to send the second 'Save30' keyword text after the material that disclosed the terms and conditions were electronically made available to them. Finally, those terms and conditions include a clear and conspicuous statement that consumers will receive autodialed telemarketing texts and provides instructions how to stop receiving them.") (internal citations omitted).

neutral arbitrator instead of a judge or jury, may allow for more limited discovery than in court, and can be subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. This agreement to arbitrate disputes includes all claims arising out of or in any way related to these Messaging Terms, or your receipt of text messages from Rugs USA or its service providers whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of when a claim arises. YOU UNDERSTAND AND AGREE THAT, BY AGREEING TO THESE MESSAGING TERMS, YOU AND Rugs USA ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION AND THAT THESE MESSAGING TERMS SHALL BE SUBJECT TO AND GOVERNED BY THE FEDERAL ARBITRATION ACT.

…

(c)     Arbitrator. Any arbitration between you and Rugs USA will be governed by the Federal Arbitration Act and the Commercial Dispute Resolution Procedures and Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by these Messaging Terms, and will be administered by the AAA. The AAA Rules and filing forms are available online at www.adr.org, by calling the AAA at 1-800-778-7879, or by contacting Rugs USA. The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement.

…

(f)     No Class Actions. YOU AND Rugs USA AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. Further, unless both you and Rugs USA agree otherwise in a signed writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.

*See* Munan Decl. at Ex. 2.

ARGUMENT

**I.**     **Federal Law requires Ms. Powell to Arbitrate Her Claims on an Individual Basis**

The Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 et seq., governs this dispute and "embodies a liberal federal policy favoring arbitration agreements."   *Greenberg v. Doctors Assocs., Inc.*, 338 F. Supp. 3d 1280, 1281 (S.D. Fla. 2018) (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005).   "The Eleventh Circuit has recognized that the FAA creates a presumption of arbitrability such that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."   *Id.* at 1281 (citations omitted). Pursuant to the FAA, "[t]he role of the courts is to rigorously enforce agreements to arbitrate." *MRI Scan Ctr., LLC v. Nat'l Imaging Assocs., Inc.*, 2013 WL 1899689, at *2 (S.D. Fla. May 7, 2013) (citation omitted); *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1292–93 (S.D. Fla. 2017) ("The FAA established that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

Courts generally treat motions to compel arbitration as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)."   *MRI Scan Ctr.,* 2013 WL 1899689, at *2.   As this Court recently explained:

> Motions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). … Pursuant to Rule 12(b)(1), a defendant may raise a 'factual attack' which challenges 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings.' *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citations omitted). Because a factual Rule 12(b)(1) motion challenges the court's power to hear the claim, the court must closely examine the plaintiff's factual allegations and 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.' *Id.* **The court is not limited to the four corners of the complaint, and it may consider materials outside of the pleadings to determine whether or not it has jurisdiction**. 'In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating itself the merits of jurisdictional claims.' *Id.*

*Vulpis v. Credit Acceptance Corp.*, 2016 WL 10932954, at *2 (S.D. Fla. Sept. 22, 2016) (emphasis added).

6

To that end, "[t]he party opposing arbitration 'has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration,' which is a burden 'not unlike that of a party seeking summary judgment.'" *Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009) (citation omitted); *Citi Cars, Inc. v. Cox Enterprises, Inc.,* No. 1:17-CV-22190-KMM, 2018 WL 1521770, at *4 (S.D. Fla. Jan. 22, 2018) ("The party opposing a motion to compel arbitration or to stay litigation pending arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration.").

a.   **Any Challenges to Formation, Existence, Scope, or Validity Are to Be Determined by the Arbitrator, Not the Court**

Ms. Powell not only agreed to arbitrate this dispute – she agreed that an arbitrator would evaluate any dispute about whether she agreed to arbitrate. *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) ("[T]the parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement."). As the Eleventh Circuit Court of Appeals has explained:

> Indeed, an agreement to arbitrate these gateway issues 'is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.' [citation omitted]. Thus, '[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter.' *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (citations omitted).

> An antecedent agreement of this kind is typically referred to as a 'delegation provision.' *See Rent–A–Center*, 561 U.S. at 68, 130 S.Ct. 2772. When 'an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision.' *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015). 'Only if we determine that the delegation clause is itself invalid or unenforceable may we review the enforceability of the arbitration agreement as a whole.' *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1335 (11th Cir. 2016).

*Waffle House, Inc.*, 866 F.3d at 1264 (emphasis in original).

The Messaging Terms that Ms. Powell agreed to clearly and unmistakably delegate to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable. Indeed, the parties expressly agreed that the "arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement." *See* Munan Decl. at Ex. 2, p. 1; *accord Waffle House, Inc*., 866 F.3d at 1267 (finding that such language "clearly and unmistakably evinces the parties' intent to arbitrate all gateway issues.").

Where the "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Bhim*, 655 F. Supp. 2d at 1311-12 (quoting *Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'ship*, 432 F. 3d 1327, 1332 (11th Cir. 2005). Here, the Messaging Terms explicitly incorporate the "Commercial Dispute Resolution Procedures and Supplementary Procedures for Consumer Related Disputes (collectively, 'AAA Rules') of the American Arbitration Association ('AAA')" (*see* Munan Decl. at Ex. 2, p. 1), which provide in Rule 14 regarding "Jurisdiction":

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.
>
> (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

AAA Consumer Arbitration Rules, R-14(a)-(b). In fact, this Court has ruled that where an arbitration provision has incorporated the AAA Rules, "any argument that the Plaintiff's TCPA claim is not arbitrable and outside of the scope of the Arbitration Provision must be presented to the arbitrator." *Shea v. BBVA Compass Bancshares, Inc*., No. 1:12-CV-23324-KMM, 2013 WL 869526, at *4 (S.D. Fla. Mar. 7, 2013) (compelling arbitration).

Accordingly, challenges to the arbitration provision, if any, must be determined by the arbitrator.

**b.   Whether the Court Chooses to Examine the Agreement or Defer to the Arbitrator, the Outcome is the Same: Ms. Powell Must Arbitrate**

The "FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quoting 9 U.S.C. §§ 2-4).   The parties here unequivocally delegated questions of arbitrability to the arbitrator. But in the event the Court decides that it has a role in the initial determination of arbitrability, the outcome is the same: Ms. Powell must arbitrate because the agreement to arbitrate is valid and enforceable and Ms. Powell's claims fall squarely within its scope.

*i.   The Arbitration Agreement is Valid and Enforceable*

The threshold question of whether an arbitration agreement exists is simply a matter of contract. *See Greenberg*, 338 F. Supp. 3d at 1281.  Under Florida law, a contract is formed from offer, acceptance and consideration. *Id.* at 1281-82 (citing *Med-Star Cent., Inc. v. Psychiatric Hosps. of Hernando Cty., Inc.*, 639 So.2d 636, 637 (Fla. 5th DCA 1994)).

Ms. Powell is contractually bound by the Messaging Terms because she (a) was presented with an offer for RugsUSA's discounts subject to the terms disclosed and made available via hyperlink in the offer, including the agreement to arbitrate, (b) accepted those terms after seeing RugsUSA's call to action, completing the double opt-in process, and sending the pre-populated text messages to RugsUSA, and (c) received the coupons that were offered by RugsUSA pursuant to the Messaging Terms. *See, e.g. Greenberg,* 338 F. Supp. 3d 1280-83 (compelling arbitration of a TCPA putative class action suit where the plaintiff acknowledged that he was presented with an offer for a free 6-inch sub and accepted the terms by opting in to receive text messages from Subway "after seeing Subway's call to action" by texting "Offers2" to 78929 "to join Subway's text club" and plaintiff admitted that the Subway offer contained a "disclaimer" stating that Terms and Conditions "would be found at subway.com/subwayroot/TermsOfUse.aspx."); *Winner v. Kohl's Dep't Stores, Inc.,* 2017 WL 3535038, at *7 (E.D. Pa. Aug. 17, 2017) (holding that plaintiff's actions in enrolling in a text

"call to action" program constituted prior consent to the terms and conditions incorporated by hyperlink, including being sent 5-7 messages per month).[3]

Moreover, RugsUSA's offer to Ms. Powell disclosed in plain view – and conspicuously (in **bold** type) – a hyperlink to where the Messaging Terms were made available. *See* Munan Decl. ¶ 15. Accordingly, Ms. Powell was at the very least put on notice of the existence of the Messaging Terms, and provided her express assent by texting RugsUSA as she was prompted through the double opt-in process. *See, e.g., Briceno v. Spring Spectrum, L.P.*, 911 So.2d 176, 178 (Fla. 3d DCA 2005) (arbitration ordered where the plaintiff entered into a contract for cellular telephone service which was contained in the packaging of defendant's telephone; in an invoice to the plaintiff the defendant informed her that changes to the terms and conditions could be found on defendant's website; and plaintiff admitted to seeing the terms and conditions internet link but did not care to click it); *Ferrie v. DirecTV, LLC*, 2016 WL 183474, at *11 (D. Conn. Jan. 12, 2016) (compelling arbitration and ruling that plaintiff "would have been on inquiry notice of the additional terms" containing the arbitration provision based on plaintiff's review of DirecTV advertisements that referenced "Additional Details" or "Additional Offers Details" that hyperlinked to the terms and conditions).

Ms. Powell is therefore bound by the Messaging Terms and the arbitration agreement set forth therein.

      ii. *Ms. Powell's Claims Fall Squarely within the Scope of the Arbitration Agreement*

The second factor the Court must consider is whether "the claims before the court fall within the scope of" the agreement to arbitrate. *Lambert*, 544 F.3d at 1195. Ms. Powell claims RugsUSA sent her automated text messages for marketing purposes without her consent. *See* Compl. ¶¶ 37, 55-57, 62. This dispute clearly falls within the scope of the arbitration agreement that Ms. Powell agreed to, which broadly encompasses "any dispute arising out of or in any way

---

[3] *Cf. Fantis v. Flywheel Sports, Inc.*, No. 18-24934-CIV, 2019 WL 1582957, at *14 (S.D. Fla. Mar. 11, 2019), *report and recommendation adopted,* No. 18-CV-24934-UU, 2019 WL 2245417 (S.D. Fla. Apr. 29, 2019) ("The defendant cites to *Greenberg v. Doctors Assocs., Inc.,* 338 F. Supp. 3d 1280, 1281 (S.D. Fla. 2018), discussed *supra*, as an example of a case where 'the plaintiff was not provided a copy of the terms of use including the arbitration agreement, but was informed of their existence and that they were applicable.' … The plaintiff in *Greenberg* was provided with a **website address** where he could find the defendants' terms and conditions. … Here, the ClassPass TOU did not provide the plaintiff with a website address where she could review Flywheel's TOS.") (emphasis in original).

related to these messaging terms and conditions ("Messaging Terms") **or [Plaintiff's] receipt of text messages from Rugs USA or its service providers**." *See* Munan Decl. at Ex. 2, p. 1 (emphasis added).

## CONCLUSION

Ms. Powell expressly agreed to arbitrate the claims she asserts in the Complaint. Because the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator (and Ms. Powell's claims otherwise squarely fall within the scope of the arbitration agreement), the Court lacks subject matter jurisdiction over them, and, as a result, should dismiss the lawsuit, or, alternatively, stay the proceedings pending arbitration. Accordingly, Defendant RugsUSA.com, Inc. respectfully requests that the Court enter an Order: (1) granting its Motion to Compel Arbitration; (2) dismissing Ms. Powell's Complaint, with prejudice, or in the alternative, staying the proceedings; (3) requiring Ms. Powell to arbitrate her claims against RugsUSA and (4) granting any additional relief the Court may deem just and proper.

## RESERVATION OF RIGHT TO CHALLENGE PERSONAL JURISDICTION

RugsUSA expressly reserves and does not waive all challenges to personal jurisdiction with respect to Ms. Powell's request to certify a class that includes members who are not citizens of Florida or subject to the jurisdiction of the Court.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(3), undersigned counsel for Defendant hereby certifies that they have conferred with counsel for the Plaintiff in a good faith effort to resolve the issues raised in this Motion, however, the parties were unable to agree on the relief requested herein.

Dated: June 21, 2019.                           Respectfully submitted,

                                                **MCDERMOTT WILL & EMERY LLP**

                                                **By:**   */s/  Kamal Sleiman*
                                                         Benton Curtis (FBN 118156)
                                                         bcurtis@mwe.com
                                                         Kamal Sleiman (FBN 105574)
                                                         ksleiman@mwe.com
                                                         333 SE 2nd Avenue, Suite 4500
                                                         Miami, FL 33131-4336
                                                         Tel: 305.329.4420
                                                         Fax: 305.716.9120
                                                         *Counsel for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on **June 21, 2019**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Kamal Sleiman*
Kamal Sleiman

<u>**SERVICE LIST**</u>

Jibrael S. Hindi, Esq.
The Law Office of Jibrael S. Hindi, PLLC
110 SE 6th Street
Ft. Lauderdale, FL 33301
T: 954.907.1136
F: 855.529.9540
jibrael@jibraellaw.com
*Counsel for Plaintiff*
<small>DM_US 160264783-3.T16793.0010</small>